**STATE of Missouri, Respondent,**

v.

**Darin McCALL, Appellant.**

**No. ED 98617.**

Missouri Court of Appeals,
Eastern District,
Division Five.

Aug. 27, 2013.

Application for Transfer to Supreme Court Denied Oct. 8, 2013.

Application for Transfer Denied
Nov. 26, 2013.

Wayne T. Schoeneberg, St. Peters, MO, for appellant.

Chris Koster, Andrew C. Hooper, Jefferson City, MO, for respondent.

GARY M. GAERTNER, JR., Presiding Judge.

### Introduction

Darin McCall (Defendant) appeals his convictions of attempt to manufacture a controlled substance, possession of a controlled substance, and endangering the welfare of a child in the first degree, arguing there was insufficient evidence to support the jury's verdict. We affirm.

### Background

On May 9, 2011, Officer Rachel Croce responded to a residence at 2020 Santa Rosa to investigate the report of a juvenile runaway. While the other officer already on scene was speaking to the juvenile runaway, Officer Croce was having a conversation with two other juveniles, H.G. and C.M., one of which had just come out of the residence. Officer Croce told them she smelled marijuana when they opened the door to the residence, and she told them that she needed to speak with a parent or an adult. Both boys went inside.

Officer Karen Meiser arrived at the scene to assist and waited on the doorstep with Officer Croce until Defendant came to

the door. Defendant permitted the officers to enter the home and consented to a search of the home for marijuana. Officer Pete Sansone also arrived to assist. The officers searched the bedrooms that belonged to H.G. and C.M., finding several items of drug paraphernalia, head units from cars, and a double-bladed knife.

The officers also searched the master bedroom and the adjoining master bathroom. The bedroom appeared to the officers to be occupied by Defendant and his girlfriend, Christine Garcia. Defendant stated to police that 2020 Santa Rosa was his primary residence. Defendant's wallet, driver's license, and non-driver's license, as well as men's clothing, were all found inside the master bedroom. A prescription pill bottle found in the master bedroom with Defendant's name on it also listed his address as 2020 Santa Rosa. In the master bathroom, police found men's shaving gel and deodorant.

Inside the closet of the master bedroom, police found a box containing several items that were commonly used in the manufacture of methamphetamine. These included a funnel, robust lye, a mason jar containing liquid fuel, a butane torch, and a pill grinder that was covered in a white powder residue. The powder on the pill grinder later tested positive for ephedrine or pseudoephedrine. A powder substance at the bottom of the mason jar also tested positive for methamphetamine. Police also found a spoon in the master bedroom with a residue on it that later tested positive for methamphetamine. Officers also found micro-baggies in the bedroom, which are commonly used for distribution and sale of drugs.

In the master bathroom, officers found several items that were later described at trial as items commonly used in the manufacture of methamphetamine. One was a plastic bottle containing hydrochloric acid, found under the sink. Tubing had been taped into the opening of the bottle that was consistent with a gas generator used in methamphetamine production. Trace amounts of powder at the end of the tubing later tested positive for methamphetamine. A bowl containing small rolled up bits of tin foil was on a bathroom shelf. Officers also found blister packets containing pseudoephedrine pills and a box of cold packs from the base of a shelving unit. Officers also found three glass Pyrex bowls, one of which contained a clear liquid. On top of the glass Pyrex containers, officers found coffee filters. Police also found isopropyl alcohol, hydrogen peroxide, a bottle of muriatic acid, and a lithium battery. Behind the toilet of the master bathroom, officers found a bottle that later tested positive for methamphetamine. Officers found razor blades on the footstool in the bathroom. They also found a black hair clipper case that contained three syringes. Police also found a bag of syringes inside a plastic container labeled "D's Good Boy Treats" in the master bathroom. Defendant was the only resident of the house with a first initial of "D." Finally, officers reported smelling a strong odor inside the master bathroom that was normally associated with the manufacturing of methamphetamine.

In the washroom, on top of the washing machine, police found additional items that could be used in the manufacture of methamphetamine. These included charcoal lighter fluid and a sealed trash bag containing a deconstructed lithium battery, used coffee filters, a deconstructed cold pack, and another gas generator for producing hydrochloric gas. The lithium strip appeared to have been removed from the battery. The used coffee filters tested positive for methamphetamine.

The State charged Defendant with attempt to manufacture methamphetamine,

possession of methamphetamine, and endangering the welfare of a child in the first degree. After a trial, the jury found Defendant guilty of all three charges. The court sentenced Defendant as a prior and persistent offender and prior drug offender to concurrent sentences of fifteen years' imprisonment for each count. This appeal follows.

## Standard of Review

■ Our review of a challenge to sufficiency of the evidence to support a conviction is limited to a determination of "whether the State introduced sufficient evidence at trial from which a reasonable trier of fact could have found each element of the offense to have been established beyond a reasonable doubt." *State v. Anderson,* 386 S.W.3d 186, 189–90 (Mo. App. E.D.2012) (quoting *State v. Bateman,* 318 S.W.3d 681, 686–87 (Mo. banc 2010)). We accept as true all evidence and reasonable inferences favorable to the verdict, disregarding contrary inferences "unless they are such a natural and logical extension of the evidence that a reasonable juror would be unable to disregard them." *Id.*

## Discussion

In Defendant's sole point on appeal, he argues that the trial court erred in overruling his motions for judgment of acquittal and judgment notwithstanding the verdict because the State presented insufficient evidence to support a finding of possession of a controlled substance. Because a finding of possession underlies all three convictions, Defendant argues there was insufficient evidence for the jury's verdict on each count. We disagree.

■ Section 195.202 [1] prohibits a person from possessing or having under his or her control a controlled substance. In order to convict a defendant for possession of a controlled substance under this section, the State must prove: (1) conscious and intentional possession of the substance, either actual or constructive, and (2) awareness of the presence and nature of the substance. *State v. Tomes,* 329 S.W.3d 400, 403 (Mo.App. E.D.2010). Where, as here, there was no actual possession, the State must prove constructive possession beyond a reasonable doubt by circumstantial evidence, supported by inferences based on proven facts. *See id.* Section 195.010(34) states that a person is in constructive possession where that person "has the power and the intention at a given time to exercise dominion or control over the substance...."

■ To prove constructive possession, the State must show, at minimum, that a defendant had access to and control over the premises where the drugs were found. *Id.; State v. Metcalf,* 182 S.W.3d 272, 275 (Mo.App. E.D.2006). Where the premises are jointly possessed, as is the case here, further evidence is required to connect the defendant to the controlled substance. *See Tomes,* 329 S.W.3d at 403. In determining whether there was sufficient further evidence, we consider the totality of the circumstances, including: "routine access to the area where the substances are kept, the presence of large quantities of the substance at the arrest scene, admissions by the accused, being in close proximity to the substances or drug paraphernalia in plain view of the law enforcement officers, the mixing of defendant's personal belongings with the drugs, or flight by a defendant upon realizing the presence of law enforcement officials." *Id.* (quoting *State v. Metcalf,* 182 S.W.3d 272, 275 (Mo. App. E.D.2006)) (internal quotation omit-

---

**1.** All statutory references are to RSMo. (Supp. 2012), unless otherwise indicated.

ted); *State v. Wurtzberger,* 265 S.W.3d 329, 336–37 (Mo.App. E.D.2008).

■ Here, the State presented sufficient evidence to establish a reasonable inference of constructive possession. First, Defendant had access to and control over the premises where officers found the drugs. He told the police that 2020 Santa Rosa was his primary address. Both mail and prescription medication found in the master bedroom confirmed this fact. This showed Defendant had access to and control over the premises. *See State v. Buford,* 907 S.W.2d 316, 318 (Mo.App. E.D. 1995) (finding access and control over drug paraphernalia found in common areas of apartment co-leased by defendant); *State v. Keller,* 870 S.W.2d 255, 260 (Mo.App. W.D.1994) (finding access and control over drugs found in jointly occupied hotel room where room registered in defendant's name).

Defendant, using *State v. Barber,* 635 S.W.2d 342 (Mo.1982), argues that the mere fact that he was present on the premises where contraband was found does not create a submissible case. *See id.* at 344–345. The Missouri Supreme Court indeed made this conclusion, but qualified it, stating that a defendant's mere presence, *"without* a showing of exclusive use or possession of the premises," is insufficient. *Id.* at 345 (quoting *State v. Wiley,* 522 S.W.2d 281, 292 (Mo. banc 1975)) (emphasis added). The court in *Barber* found there was no evidence to show the defendant had regular use, exclusive or joint, over any part of the residence where police found drugs. *Id.* at 344.

In contrast here, Defendant admitted to police that this was his residence, and he does not dispute that the evidence supported an inference he had routine access to the premises, jointly with the other residents of the house. Because Defendant's possession of the premises was joint, the State had to produce further evidence supporting the inference that Defendant, rather than one of the other residents of the house, intended to exercise dominion or control over the drugs. *See Tomes,* 329 S.W.3d at 403. The *Barber* court, in finding the defendant did not have any control over the premises, did not have the minimum evidence required for constructive possession, and thus did not need to consider whether any further evidence connected the defendant to the drugs. *See id.* Thus, Defendant's reliance on *Barber* is misplaced.

Next, in addition to Defendant's joint control of the premises, there was sufficient further evidence to support an inference Defendant had the power and intention to exercise dominion or control over the drugs and drug paraphernalia here. Defendant's personal items found in the master bedroom, as well as personal items in the master bathroom typically used by males, raise an inference that Defendant, along with his girlfriend whose personal items were also present in these rooms, had greater access to these two rooms than the other members of the household. It was reasonable to infer that the plastic container labeled "D's Good Boy Treats" belonged to Defendant, the only household member with the initial "D." Considering the large number of items found in these two rooms that are commonly used in the production of drugs, the fact that many of them contained drug residue, the fact that one of them contained Defendant's initial, and the fact that several of Defendant's personal items were found in the same two rooms, there was sufficient further evidence to support an inference that Defendant constructively possessed the drugs and drug paraphernalia in these two rooms. *See Wurtzberger,* 265 S.W.3d at 337–38.

Additionally, though the deconstructed cold pack, deconstructed battery, gas generator, and used coffee filters containing traces of methamphetamine found in a tied bag in the washroom are not linked specifically to Defendant through further evidence of possession, their presence buttressed the inference that Defendant constructively possessed the items found in the master bedroom and bathroom. The washroom is an area all members of the household can access. The fact that additional drug items were there supported an inference that Defendant was aware of the nature of the items in the master bedroom and bathroom and that those items were used for the manufacture of methamphetamine rather than for some other purpose. See *State v. Garrett*, 765 S.W.2d 314, 316 (Mo.App. E.D.1988) (finding defendant's access to common areas of house where police found drug paraphernalia logically relevant to show defendant possessed drugs found in his car with full knowledge of illegal nature of those substances).

Using *State v. Moses*, 265 S.W.3d 863 (Mo.App. E.D.2008), Defendant argues that the State failed to offer any evidence that put either Defendant or any of his personal items in proximity to or with knowledge of the drug items found here. In *Moses*, officers found mail in the residence that was addressed to the defendant but did not match the address in which the drugs were found. *Id.* at 865. The officers also found the defendant's personal items in one bedroom, but no drugs were found in that bedroom. *Id.* Additionally, police did not arrest the defendant on the scene, but much later. Police never observed the defendant on the same premises as any drugs. *Id.* Here, unlike in *Moses*, officers not only found mail and prescription pill bottles in the master bedroom addressed to Defendant at 2020 Santa Rosa, Defendant also affirmed that this was his primary address. Police found Defendant's personal belongings in the same rooms they found drugs and drug paraphernalia. Defendant was also present on the premises where the police found these items. All of these factors distinguish the present case from *Moses*.

Considering the totality of the circumstances here, the evidence was sufficient from which the jury could infer that Defendant had the power and the intention to exercise dominion or control over the drugs and drug paraphernalia found in the master bedroom and bathroom. Point denied.

### Conclusion

There was sufficient evidence from which the jury could find the element of possession in each of the three counts against Defendant. We affirm.

ANGELA T. QUIGLESS, J. and MICHAEL W. NOBLE, S. J., concur.